IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE ARTHUR SNEED, #48281, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06-CV-59-M (BH) |
| | § | |
| LEIGH DIXON, et al., | § | |
| | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS

Pursuant to the District Court's policy of automatic referral in cases involving pro se plaintiffs, this case was referred to this Court for pretrial management, including the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendations to the District Court on dispositive motions. Before the Court are the following motions:

(1)    *Defendant's Motion for Summary Judgment* ("Mot."), filed September 15, 2006;

(2)    *Brief in Support of Defendant's Motion for Summary Judgment* ("Mot. Br."), filed September 15, 2006;

(3)    *Appendix in Support of Defendant's Motion for Summary Judgment* ("Mot. App."), filed September 15, 2006;[1]

(4)    *Plaintiff's Reply* [sic] *to Defendant's Motion for Summary Judgment* ("Resp."), filed November 3, 2006;

(5)    *Brief in Support of Plaintiff's Reply* [sic] *to Defendant's Motion for Summary Judgment* ("Resp. Br."), filed November 3, 2006;

(6)    Appendix in Support of Plaintiff's Reply [sic] to Defendant's Motion for Summary

---

[1]Pursuant to this Court's September 18, 2006 *Order*, the Affidavit of Debbie Patterson, filed on September 18, 2006, was made a supplement to the *Appendix in Support of Defendant's Motion for Summary Judgment*.

Judgment ("Resp. App."), filed November 3, 2006;[2]

(7)     *Defendant's Reply to Plaintiff's Reply [sic] to Defendant's Motion for Summary Judgment* ("Reply"), filed November 22, 2006.

Having reviewed the pertinent filings above and the law applicable to the issues raised, the Court finds that *Defendant's Motion for Summary Judgment* should be **GRANTED**.

## I. BACKGROUND

Mr. Willie Arthur Sneed ("Plaintiff") is an inmate currently incarcerated at the Byrd Unit in Huntsville, Texas.  Plaintiff claims that while residing in Commerce, Texas, on May 1, 2004, he was assaulted by several Micronesian[3] men living in his apartment complex. (*Answers to Magistrate Judge's Questionnaire*, *Sneed v. Dixon*, No. 3:06-CV-59, 1 (N.D. Tex. filed Apr. 21, 2006) (hereinafter "MJQ.")  Plaintiff states that during the assault, the men threw rocks and bottles at him and that he left the scene to go back to his apartment.  *Id.*

Mr. Leigh Dixon ("Defendant"), a sergeant with the City of Commerce Police Department, arrived at the apartment complex in uniform in response to a dispatch.  (Mot. App. at 51-3.) Defendant found Officer Doerr speaking with the Micronesians and left the scene of the assault in an effort to locate Plaintiff.  (*Id.* at 51-2.)  Prior to his search, both an unidentified Micronesian and the apartment complex manager told Defendant that Plaintiff either had a gun or went to get a gun.

---

[2]Plaintiff filed his response with a brief and appendix in support on November 3, 2006, but did not submit any competent summary judgment evidence.  However, the first five pages of Plaintiff's *Answers to the Magistrate Judge's Questionnaire*, filed on April 21, 2006, constitute an amendment to the filed complaint since this portion of Plaintiff's *Answers* is verified.  *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). The first five pages were submitted under the penalty of perjury and may be considered as competent summary judgment evidence.  *See Barnes v. Johnson*, 2006 WL 3102343, at *1 (5th Cir. 2006) (verified complaint may serve as competent summary judgment evidence).  The subsequent seventeen pages of Plaintiff's *Answers* consist primarily of documents previously submitted with his complaint.  Since pages six through twenty-two are neither incorporated by reference in his written answers contained in the first five pages nor submitted under penalty of perjury, they are not verified and are thus not competent summary judgment evidence.

[3]The term "Micronesian" refers to citizens of the Federated States of Micronesia.

(*Id*. at 52 and 91.)  Defendant found Plaintiff in the doorway of one of the apartment units in an agitated state with blood on his nose and mouth.  (*Id*. at 52.)  Defendant noticed what appeared to be a shiny object in his hand that could have been a gun, *id*., although Plaintiff states that he did not have a weapon.  (MJQ at 3.)  The parties do not dispute that Defendant drew his weapon upon locating Plaintiff.

At this point the parties' accounts differ dramatically.  According to Plaintiff's version, Defendant ran into his apartment and ordered him to go outside.  (*Id*. at 1.)  Plaintiff avers that he did not disobey any of Defendant's commands, nor did he do anything to threaten Defendant.  (*Id*. at 3.)  Once outside of the apartment, Defendant administered pepper spray to his eyes, nose, and mouth.  (*Id*. at 1.)  Defendant slammed him into a parked car and then face down into the pavement, and Defendant then "knee dropped" him in the neck and put a gun to the back of his head.  *Id*. During the course of these events, Defendant broke one of Plaintiff's front teeth.  (*Id*. at 2.)  Plaintiff was taken to a local hospital in an ambulance for the injuries he suffered as a result of Defendant's use of force.  *Id*.  When Plaintiff asked what he had done to go to jail, Defendant responded, "he would think of something when [they] got there."  *Id*.

According to Defendant's version of the May 1, 2004 incident at the apartment complex, Defendant never entered the apartment, but rather instructed Plaintiff to exit and show his hands. (Mot. App. at 52.) Plaintiff refused to comply to Defendant's repeated verbal commands and instead retreated further into the apartment.  (*Id*. at 53.)  When Plaintiff returned to the doorway, the object Defendant believed to be a gun was no longer visible.  *Id*.  Rather than obey commands to lie on the ground and place Plaintiff's hands to the side, Plaintiff instead attempted to re-enter the apartment. When Plaintiff started to walk away, he began to remove his sweater, at which point Defendant

believed that Plaintiff was preparing to fight.  (*Id*. at 54.)  Defendant then administered pepper spray to Plaintiff's eyes to subdue him and to prevent a violent escalation of the encounter.  *Id*.  Defendant placed Plaintiff on the ground, and Officer Doerr then arrived and restrained Plaintiff with handcuffs.  *Id*.  Defendant avers that he did not hit, kick, or strike Plaintiff in any way; he only used the amount of force necessary to overcome Plaintiff's resistance and to maintain control of the situation in order to take Plaintiff into custody.  (*Id*. at 56.)  According to Defendant, Plaintiff stood and walked from the scene after being restrained by Defendant.  (*Id*. at 58.)  Defendant called an ambulance to take Plaintiff to the hospital for treatment of the injuries Plaintiff apparently sustained in the fight with the Micronesians and from Defendant's use of pepper spray.  *Id*.

The next two encounters between the parties that form the basis of this suit occurred almost one year later.  On March 5, 2005, Plaintiff alleges he placed a call to 911 because he believed his wife had gone into a diabetic seizure.  (MJQ at 7.)  Defendant, who responded to the call, avers that it is common practice for a police unit to accompany medical personnel to this particular apartment complex due to prior problems.  (Mot. App. at 58.)  Upon his arrival, Defendant detected an odor consistent with drug usage but did not see Plaintiff in the apartment.  (*Id*. at 58-9.)  Since medical personnel were present to attend to the medical situation, Defendant left to investigate what he believed to be illegal drug use.  (*Id*. at 59.)  Defendant located Plaintiff outside the apartment, and during a pat down of Plaintiff, Defendant discovered a crack pipe and two rocks of crack cocaine in Plaintiff's pocket.  (Mot. App. at 59.)  Defendant then arrested Plaintiff for possession of a controlled substance.  (*Id*.; *accord* MJQ at 7.)

Four days later, while out on bond after his arrest for possession of a controlled substance, Defendant appeared at Plaintiff's residence on March 9, 2005, and told his wife that he had a search

warrant for the home and a warrant for Plaintiff's arrest. (*Id.* at 7.) Defendant avers that he, along with several other officers, executed a felony "blue" warrant for Plaintiff which he believes was issued through the Texas Department of Corrections Parole Board. (Mot. App. at 34, 59.) During a search of the premises, Defendant located Plaintiff hiding in a closet and took him into custody based upon the warrant. (*Id.* at 59.)

Plaintiff pled guilty and was convicted on January 19, 2006, as a result of both the May 1, 2004 and March 5, 2005 arrests by Defendant. For the May 1, 2004 incident, Plaintiff pled guilty to an information alleging a violation of § 38.15 of the Texas Penal Code, the offense of interference with public duties; he was fined and sentenced to 120 days confinement. (*Id.* at 70.) For the March 5, 2005 arrest, Plaintiff pled guilty to an indictment charging possession of a controlled substance, namely cocaine in the amount of less than one gram, and received a sentence of one year as punishment. (*Id.* at 76, 80.)

Plaintiff, who proceeds *pro se*, alleges that Defendant used excessive force in connection with the May 1, 2004 incident. (*Complaint*, *Sneed v. Dixon*, No. 3:06-CV-59, 1 (N.D. Tex. filed Jan. 9, 2006) (hereinafter "Compl.") This Court granted Plaintiff leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 and issued a questionnaire seeking details on the allegation of excessive force raised in Plaintiff's *Complaint*. In his *Answers to the Magistrate Judge's Questionnaire*, Plaintiff avers that, in addition to excessive force, Defendant conducted an illegal search and seizure of his person and premises on March 5 and 9, 2005. (MJQ at 4.) Plaintiff alleges that the searches conducted on March 5 and 9, 2005, were in retaliation for the May 1, 2004 incident involving Defendant. *Id.* Plaintiff also appears to raise claims of false arrest in connection with his encounters with Defendant on May 1, 2004, and on March 5 and 9, 2005. (*See* MJQ at 1-4.)

Defendant filed the instant *Motion for Summary Judgment* on September 15, 2006, asserting that Plaintiff's claims of false arrest and illegal search and seizure on March 5 and 9, 2005, are improper collateral attacks on Plaintiff's state court convictions. (Mot. at 4.) Defendant also asserts that any force used in connection with the May 1, 2004 incident was not excessive, and that no constitutional violation occurred during any of his encounters with Plaintiff. (*Id.* at 3.) Defendant also asserts that he is entitled to qualified immunity for his actions on May 1, 2004, and March 5 and 9, 2005. *Id.*

## II.  STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show ... some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992).  Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.  "[T]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.*  (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

Generally, the pleadings of a plaintiff who is proceeding *pro se* must be liberally construed in his favor. *See Hurd v. Doe*, 2003 WL 21640569, *3 (N.D. Tex. July 10, 2003).  However, under Rule 56 of the Federal Rules of Civil Procedure, the court does not have an obligation to '"sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Crane v. Bowles*, 2004 WL 1057771, at *1 (N.D. Tex. May 6, 2004) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th  Cir. 1994)).  Instead, "the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

## III.  ANALYSIS

Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 for the alleged use of excessive force by Defendant on May 1, 2004.  Plaintiff also seeks damages pursuant to § 1983 for alleged illegal searches and seizures on March 5 and March 9, 2005.

### A.  Applicability of *Heck v. Humphrey*

Defendant asserts that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's claims that challenge the validity of his convictions he received as a result of the May 1, 2004, and March 5, 2005 incidents.[4]  (*See* Mot. Br. at 20.)  In *Heck,* the Supreme Court ruled that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprison-
> ment, or for other harm caused by actions whose unlawfulness would render a con-
> viction or sentence invalid, a § 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.
> A claim for damages bearing that relationship to a conviction or sentence that has *not*
> been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).  Under *Heck*, courts must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Id*. at 487.  When success in a civil "action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying con-viction or sentence."  *Muhammad v. Close*, 540 U.S. 749, 751 (2004).

---

[4]The potential applicability of *Heck* was not initially apparent because Plaintiff does not state in his *Complaint* that he had been convicted of any offense.  (*See* Compl.)  Since no conviction arose from the March 9, 2005 incident, *Heck* is inapposite to Plaintiff's allegations of illegal search and seizure and false arrest on this date.

### 1. *Excessive Force*

The Fifth Circuit has not addressed the applicability of *Heck* to a claim of excessive force arising in connection with Texas Penal Code § 38.15. Given the lack of case law on this matter and the sparsity of case law involving § 38.15 in general, the Court finds instructive cases analyzing *Heck* as it applies to similar offenses involving obstruction of justice.[5] The Fifth Circuit has held that claims of excessive force are barred by convictions such as aggravated assault and battery of an officer. *See Hainze v. Richards*, 207 F.3d 795, 798 (5th Cir. 2000) ("an excessive force claim under section 1983 is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events"); *Hudson v. Hughes*, 98 F.3d 868, 873 (5th Cir. 1996) (holding plaintiff's excessive force claim against an arresting officer barred by his conviction of battery against that officer because, if the officer had used excessive force, the plaintiff's use of force would have been justified as self-defense and he would not have been convicted of battery). However, the Fifth Circuit has also stated: "How *Heck* applies to excessive force claims is not always clear. By proving an excessive force claim, a plaintiff will not invariably invalidate his conviction." *Arnold v. Town of Slaughter*, 100 Fed. Appx. 321, 323 (5th Cir. 2004). Whether *Heck* bars a § 1983 claim depends on the nature of the offense and the nature of the plaintiff's claims. *Id*.

Under Texas law, a person commits the offense of interference with public duties "if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with...a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by

---

[5]Section 38.15 is one of a number of Texas penal statute related to the obstruction of justice. *Carney v. State*, 31 S.W.3d 392, 395 (Tex.App.-Austin, 2000, *no pet.*); *see Boyd v. State*, – S.W.3d –, 2006 WL 2506976, *5 (Tex.App.-Eastland, 2006, *pet. ref'd*) (plaintiff convicted of interference with public duties under § 38.15(a)(1) could have been charged with evading arrest or detention under § 38.04); *see Tucker v. State*, 114 S.W.3d 718, 723 (Tex.App.-Corpus Christi, 2003, *pet. ref'd*) (identical policy concerns are implicated in assault on a public servant under Texas Penal Code. Ann. § 22.01 and interference with public duties of a police officer under § 38.15(a)(1).)

law." Tex. Penal Code Ann. § 38.15(a)(1) (Vernon 2006).  It is a defense to prosecution under §
38.15 if the interruption, disruption, impediment, or interference alleged consisted of speech only.
*Id*. at (d).  Unlike the related offense of assault on a public servant, self-defense is not a defense to
prosecution under § 38.15.  *See* Tex. Penal Code. Ann. § 9.31(b) (Vernon 2006).

Plaintiff's claim of excessive force arises in connection with the May 1, 2004 incident that
resulted in his conviction for interference with public duties.  (MJQ 1-2.)  Using the logical
framework for a *Heck* analysis established in *Ballard v. Burton*, the dispositive question to
determine whether *Heck* applies to preclude Plaintiff's § 1983 claim is as follows: would a finding
that Defendant's use of force was objectively reasonable necessarily call into question the validity
of Plaintiff's conviction for interference with public duties?  444 F.3d 391, 398 (5th Cir. 2006).  If
it is possible for Plaintiff to have interfered with the public duties of Defendant and for Defendant's
use of force to have been objectively unreasonable, then *Heck* does not bar Plaintiff's claim.  *See*
*id*.  On the other hand, if the only way that Defendant's use of force could be objectively reasonable
is for Defendant to have interfered with the public duties of Defendant, then *Heck* bars Plaintiff's
excessive force claim.  *See id*.

According to Plaintiff's version of the events, Defendant, without provocation, sprayed him
with mace, threw him into a parked car, and then slammed him into the pavement.  (MJQ at 1-2).
Defendant avers that he only used the amount of force necessary to overcome Plaintiff's refusal to
comply with his repeated oral commands.  (Mot. App. at 53-54.)  The offense for which Plaintiff
was convicted does not require or imply that Plaintiff used force, but only that he interfered with the
duties of Defendant, a public officer.  Plaintiff's interference does not justify Defendant's use of
more force than reasonably necessary to perform his duties as a public servant.  Accordingly, a

finding of excessive force can co-exist with Plaintiff's conviction of interference with public duties and does not necessarily implicate the validity of the conviction. *Heck*, 512 U.S. at 486; *Ballard*, 444 F.3d at 397. *Heck* therefore does not bar Plaintiff's § 1983 claim of alleged use of excessive force during the May 1, 2004 incident.

### 2. *Illegal Search and Seizure*

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. Generally, a search or seizure without probable cause or warrant is a violation of the Fourth Amendment. *See United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000). Plaintiff avers that Defendant conducted an illegal search and seizure of his person and premises on March 5, 2005, in an effort to harass and retaliate against Plaintiff.[6] (MJQ at 4.) As a result of the March 5, 2005 incident, Plaintiff was convicted for the possession of a controlled substance and sentenced to one year confinement in the Hunt County jail. (Mot. App. at 80.)

To determine whether *Heck* applies to preclude Plaintiff's § 1983 claim of an illegal search and seizure on March 5, 2005, the Court must determine whether Defendant's allegedly illegal search and seizure necessarily calls into question the validity of Plaintiff's conviction for possession of a controlled substance. *See Ballard*, 444 F.3d at 398. The Court determines that it does. If Defendant were found to have conducted an illegal search and seizure on March 5, 2005, the evidentiary basis, and thus the validity, of Plaintiff's conviction for possession of a controlled substance would be called into doubt. Plaintiff's claim of illegal search and seizure does not accrue until his conviction for possession of a controlled substance has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

---

[6]Since no conviction resulted from the March 9, 2005 incident, a claim of illegal search and seizure on this date is not barred by *Heck*.

determination, or called into question by a federal court's issuance of a writ of habeas corpus."

*Heck*, 512 U.S. at 486-87.  Consequently, Plaintiff's claim of an illegal search and seizure on March

5, 2005, is not cognizable under § 1983 should be dismissed.  *Id.*; *Porter v. Richardson*, 2006 WL

740992, *3 (N.D. Tex. Mar. 13, 2006) (finding that *Heck* barred plaintiff's claims of illegal search

and seizure because plaintiff was convicted of possession of  a controlled substance as a result of

the search.)

### 3.  False Arrest

Defendant asserts that Plaintiff's claims of false arrest on May 1, 2004, and March 5, 2005

are barred by *Heck*.  Plaintiff does not explicitly state that he was falsely arrested on either of these

dates; he only says that he was arrested for no reason on May 1, 2004 (*see* MJQ at 2) and that

Defendant entered his apartment on March 5, 2005 without probable cause.  (*See* MJQ at 4.)  To the

extent that these statements could be construed as claims of false arrest, a false arrest on either May

1, 2004, or March 5, 2005, implicitly would invalidate Plaintiff's convictions resulting from the

incidents on those dates.  Accordingly, any claims of false arrest asserted by Plaintiff from either

the May 1, 2004, or the March 5, 2005 incident are barred by *Heck*.  *Wells v. Bonner*, 45 F.3d 90,

95 (5th Cir. 1995).

## B.  Qualified Immunity

Since Plaintiff's convictions bar consideration of his claims of illegal search and seizure on

March 5, 2005, and false arrest on May 1, 2004, and March 5, 2005, only three claims remain.  The

first is Plaintiff's allegation that Defendant used excessive force during the May 1, 2004 incident.

The second and third claims are that Defendant conducted an illegal search and seizure and falsely

arrested him on March 9, 2005.  Defendant moves for summary judgment on the grounds that he is

entitled to qualified immunity since no constitutional violation occurred on any of the dates and that the amount of force used on May 1, 2004, was not excessive.  (Mot. at 3.)

When a defendant seeks qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  This is because qualified immunity is an immunity from suit, rather than a defense to liability, and the immunity is effectively lost if a case is erroneously allowed to go to trial.  *Id.*  "Where it is not evident from the allegations of the complaint alone that the defendants are entitled to qualified immunity, the case will proceed to the summary judgment stage, the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation."  *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002).  If, after viewing the summary judgment evidence in the light most favorable to the plaintiff, a court concludes that there is a genuine issue of material fact as to the issue of qualified immunity, the case and the qualified immunity issue must proceed to trial.  *Id.*

### *1.  Standard*

A state official who is sued for a constitutional violation pursuant to § 1983 may assert the affirmative defense of qualified immunity.  *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.1992).  Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine whether Defendant is entitled to qualified immunity, the threshold question is

whether, on the facts alleged by Plaintiff, a clearly established constitutional right would have been violated. *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (citing *Saucier*, 533 U.S. at 200). Assuming the facts alleged by Plaintiff are true, if Defendant did not violate a constitutional right, the Court need inquire no further. *Saucier*, 533 U.S. at 201.

If, assuming the facts alleged by Plaintiff are true, he can show that his constitutional rights were violated, the Court must then determine whether Defendant's conduct was objectively reasonable in light of clearly established law at the time of the challenged conduct. *Id.*; *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). "Even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." *McClendon v. City of Columbia*, 258 F.3d 432, 438 (5th Cir. 2001). Qualified immunity ensures that before officers are subjected to suit, they are on notice their conduct is unlawful. *Saucier*, 533 U.S. at 206. "The law is deemed to be clearly established if the contours of a right asserted are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *White*, 959 F.2d at 544. Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question. *Id.*

### 2. Excessive Force on May 1, 2004

#### a. Constitutional Violation

The threshold question to determine if Defendant is entitled to qualified immunity for Plaintiff's claim of excessive force during the May 1, 2004 incident is whether, on the facts alleged by Plaintiff, a clearly established constitutional right would have been violated. *See Brosseau*, 543 U.S. at 197. Plaintiff' sworn allegation states that after demanding that he exit his apartment, Defendant administered pepper spray into his eyes, nose, and mouth. (MJQ at 1.) Plaintiff avers

that Defendant then slammed him into a parked car and face down into the pavement, during the course of which he broke one of his front teeth. (*Id*. at 1-2.) Plaintiff also avers that Defendant "knee dropped" him in the neck and put a gun to the back of his head. *Id*. Plaintiff avers that as a result of the injuries caused by Defendant, he received treatment at the local hospital. (*Id*. at 2.) Defendant does not deny that Plaintiff received injuries on May 1, 2004, although he avers that Plaintiff's injuries resulted from Plaintiff's earlier fight with the Micronesians. (Mot. App. at 58). Given the extent of Plaintiff's injuries he allegedly received as a result of Defendant's use of force, notably the broken tooth, he appears to have alleged more than *de minimus* injuries. *See Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (bruising, swelling, loosened teeth and broken dental plate were not *de minimis* injuries in excessive force case). Assuming that the facts alleged by Plaintiff are true, he has met his burden to allege a violation of his clearly established constitutional right to be free from unreasonable seizure and the use of excessive force under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

### b. Clearly Established Constitutional Right

Having alleged a constitutional violation of excessive force on May 1, 2004, Plaintiff must, under the second step of qualified immunity analysis, show that Defendant's conduct was objectively unreasonable in light of clearly established law at the time of the challenged conduct. *Saucier*, 233 U.S. at 201. "[A]ll claims that law enforcement officers have used of excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham*, 490 U.S. at 395. The issue of reasonableness centers on whether the officer's actions were "objectively reasonable" in light of the facts and circumstances with which he is faced, without regard to the

officer's underlying intent or motivation.  (*Id*. at 397).  Whether the use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  (*Id*. at 396.)  "In applying *Graham*, the Fifth Circuit has used a three-part test for § 1983 excessive force claims, requiring a plaintiff to show (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable."  *Thomas v. Murray*, 107 F.Supp.2d 748, 757 (N.D. Tex. 2000) (citing *Knight v. Caldwell*, 970 F.2d 1430, 1432-33 (5th Cir. 1992).)

Plaintiff satisfies the first step of establishing a claim of excessive force under § 1983 by showing an injury.  *See Thomas*, 107 F.Supp.2d at 757.  An "injury" means "damage or harm to the physical structure of the body."  *Knight*, 970 F.2d at 1433.  Plaintiff avers that he broke one of his front teeth and received other injuries to the face when Defendant administered pepper spray and then slammed him into a parked car and pavement at the apartment complex.  (MJQ at 1-2.)  After his arrest on May 1, 2004, Plaintiff received treatment at the hospital for these injuries.  (*Id*. at 1.)

Plaintiff next must show that his injuries resulted directly and only from Defendant's use of force.  *See Thomas*, 107 F.Supp.2d at 757.  Plaintiff avers that he received his injuries as a result of Defendant's use of force.  (*See* MJQ at 1-2.)  However, the uncontroverted summary judgment evidence provided by Defendant indicates otherwise.  Both the sworn affidavits from Defendant and Ms. Patterson, the manager of the apartment complex, show that Plaintiff suffered an injury to the mouth during his altercation with the Micronesians residing at the complex prior to the arrival of law enforcement.  (Mot. App. at 52 and 92.)  Ms. Patterson states that she heard Plaintiff tell officers that "he had been hit in the face or mouth with a beer bottle during his altercation with the Micronesians."  (*Id*. at 92.)  Defendant avers that when he first found Plaintiff, he had blood on his

nose and mouth, which indicated that he suffered an injury prior to his encounter with Defendant. (*Id*. at 52.)  The medical records submitted by Defendant note that Plaintiff was hit with a bottle by a known assailant.  (*Id*. at 90.)  Finally, Plaintiff concedes he "received additional severe injuries to the injuries [on his nose an mouth] he already had."  (Resp. Br. at 4.)  This statement implies that some of his injuries were pre-existing and did not result directly and only from Defendant's use of force.  Nevertheless, Plaintiff's sworn questionnaire regarding how he suffered his injuries suffices to create a genuine issue of material fact regarding whether his injuries resulted directly and only from Defendant's use of force.  *Celotex*, 477 U.S. at 323-24.

Notwithstanding this fact issue, however, Defendant's conduct was objectively reasonable in light of the facts and circumstances of the May 1, 2004 incident.  "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham*, 490 U.S. at 396.  Whether the force used was objectively unreasonable depends on the facts and circumstances of the particular case and includes the (1) the severity of the crime, (2) whether the suspect posed an immediate threat to the safety of the officer or others, and (3) whether the plaintiff was actively resisting arrest or was attempting to evade arrest. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998) (citing *Graham*, 490 U.S. at 396.)  The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than with the benefit of 20/20 hindsight.  *Graham*, 490 U.S. at 396.

Given the summary judgment evidence submitted by the parties, Defendant's conduct was objectively reasonable.  Upon his arrival at the apartment complex, an unidentified individual present at the scene of the physical altercation as well as the apartment manager told Defendant that Plaintiff either had a gun or went to his apartment to get one.  (Mot. App. at 52 and 91.)  After

- 17 -

locating Plaintiff, Defendant noted that Plaintiff was agitated and held an object in his hand that appeared to be shiny and could have been a gun.  (*Id*. at 52.)  Defendant, who was in his police uniform, avers that Plaintiff did not immediately obey his verbal commands to exit the apartment and refused to obey his verbal commands to lie on the ground.  (*Id*. at 53.)  Plaintiff attempted to re-enter the apartment and then walked away from Defendant despite being ordered not to do so.  *Id*. When Plaintiff began to pull his sweater off, Defendant believed that the encounter could have escalated into a violent confrontation and only then did he administer pepper spray.  (*Id*. at 54.) After the application of pepper spray, Defendant pushed Plaintiff to the ground and restrained him with hand cuffs.  (*Id*. at 57.)  Defendant avers that his use of the pepper spray was in compliance with his training in police procedure to deal with subjects who appear dangerous and resist verbal commands of an officer.  *Id*.  Based on the perceived immediate threat Plaintiff posed to the safety of Defendant and others from his participation in the altercation and perceived possession of a gun, and based on his active attempt to evade or resist arrest, Defendant's use of pepper spray and physical force to restrain Plaintiff was objectively reasonable.  *Gutierrez v. City of San Antonio*, 139 F.3d at 447.  Because Plaintiff lacks of controverting summary judgment evidence, nothing in his pleadings indicates that Defendant's actions were objectively unreasonable.  Furthermore, although Plaintiff avers that he did not have a gun (MJQ at 3), Defendant, based on what two individuals told him upon his arrival, believed that Plaintiff was armed.  (Mot. App. at 52 and 91.)  Since the perspective of a reasonable officer on the scene controls, Defendants use of force was reasonable to respond to what he believed was a potentially life-threatening situation.  *Graham*, 490 U.S. at 396. Accordingly, Defendant is entitled to the defense of qualified immunity for Plaintiff's claim of excessive force on May 1, 2004.  *McClendon*, 258 F.3d at 438.

- 18 -

### 3.   *Illegal Search and Seizure and False Arrest on March 9, 2005*

#### a.   *Constitutional Violation*

With regards to Plaintiff's final two claims of an illegal search and seizure and false arrest

on March 9, 2005, Plaintiff has not met his burden to allege a violation of a clearly established

constitutional right.  *See Brosseau*, 543 U.S. at 197.  Plaintiff initially alleges that Defendant came

to his home "several more time (sic) without probable cause" and that one of these incidents

occurred on March 9, 2005.  (MJQ at 4.)  However, later on the same page in his *Answers to the*

*Magistrate Judge's Questionnaire*, Plaintiff states Defendant retaliated with a parole violation on

March 9, 2005.  *Id.*  Plaintiff also states in the documents accompanying his *Answers the Magistrate*

*Judge's Questionnaire* that Defendant announced that the purpose of the March 9 visit was to

execute a search warrant of the home and a warrant for Plaintiff's arrest.  (MJQ at 7.)  Defendant

cannot be acting upon Plaintiff's admitted parole violation and lack probable cause to conduct a

search of his home at the same time.  Plaintiff has failed to allege a violation of a clearly established

constitutional right to be free from unreasonable seizure under the Fourth Amendment.  *See*

*Brosseau*, 543 U.S. at 197.

#### b.   *Clearly Established Constitutional Right*

Even if Plaintiff had alleged a violation of a clearly established constitutional right in his

claims of illegal search and seizure and false arrest on March 9, 2005, Defendant's actions were

objectively reasonable.  Defendant avers that he, along with several other officers, executed a felony

warrant on March 9, 2005, for Plaintiff that was issued through the Texas Department of Corrections

Parole Board.  (Mot. App. at 59; *see id.* at 34.)  The warrant authorized Defendant to search

Plaintiff's residence and take him into custody.  (*Id.* at 59.)  Plaintiff fails to identify specific

- 19 -

evidence in the summary judgment record supporting his claim that he was subjected to an illegal search and seizure and false arrest, and he has therefore failed to meet his summary judgment burden to show that a genuine issue of material fact exists for this claim. *Celotex*, 477 U.S. at 323-24. Furthermore, Defendant's summary judgment evidence that he was acting under the authority of a warrant is consistent with Plaintiff's statements that Defendant announced the purpose of the March 9, 2005 visit was to execute a search warrant of the home and a warrant for Plaintiff's arrest. (*See* MJQ at 7.)  Since Defendant acted within the course of his official responsibilities, he is entitled to the defense of qualified immunity for Plaintiff's claims of illegal search and seizure and false arrest on March 9, 2005. *Pierson v. Ray*, 386 U.S. 547, 555 (1967) (officers entitled to qualified immunity when they act in good faith in making an arrest and with probable cause).

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends that Defendant's *Motion for Summary Judgment* be **GRANTED**, and that the District Court find that

(1)     Defendant is entitled to qualified immunity for his use of force on May 1, 2004;

(2)     Defendant is entitled to qualified immunity for the search and seizure and arrest on March 9, 2005.

(3)     Plaintiff's claims of false arrest on May 1, 2004, and March 5, 2005, and claim of illegal search and seizure on March 5, 2005, should be **DISMISSED with prejudice** until such time as Plaintiff can satisfy the conditions set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).

**SO RECOMMENDED** on this 30th day of March, 2007.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE